(No. 26424.—

MARY SCOTT *et al.* Plaintiffs in Error, *vs.* FREEPORT MOTOR
CASUALTY COMPANY, Defendant in Error.

*Opinion filed January 20, 1942—Rehearing denied March 11, 1942.*

FRANKLIN J. STRANSKY, and GEORGE SPITZ, for plaintiffs in error.

BURRELL, BURRELL & SNOW, and HENRY C. WARNER, (DAVID M. BURRELL, of counsel,) for defendant in error.

Mr. JUSTICE SMITH delivered the opinion of the court:

Defendant in error is an insurance corporation, authorized to do business in the State of Illinois. It is engaged in the casualty insurance business. On November 27, 1935, it issued a liability policy to Bernard Eden, effective for the period of one year from that date. The policy covered an automobile belonging to Eden, and insured him against loss or liability for injuries to persons or property of others up to certain amounts limited by the policy. The premium was paid and the policy became in full force and effect.

On August 18, 1936, the automobile covered by the policy was involved in an accident in which plaintiffs in error, Mary Scott and Fred Scott, received rather serious personal injuries. Defendant in error was duly notified of the accident and the injuries resulting therefrom.

Thereafter, plaintiffs in error brought suit in the circuit court of Lee county against Eden to recover damages for the injuries which they sustained as a result of the accident. On December 31, 1938, judgments were entered in said suit in the sum of $5000 in favor of Mary Scott and $2500 in favor of Fred Scott. An execution was issued on the judgments. Said judgments have not been satisfied.

The policy contained a provision making the liability of defendant in error, under the policy, direct to any person entitled to recover from the insured, in the same manner, and to the same extent, that defendant in error was, under the policy, liable to the insured. It further provided, that such liability might be enforced by the person entitled to recover from the assured in an action against defendant

in error, commenced any time after the rendition of final judgment in favor of the injured person against the assured.

On February 20, 1939, the judgments rendered, in favor of plaintiffs in error, and against Eden, not having been satisfied, plaintiffs in error brought this suit in the circuit court of Lee county against defendant in error to recover the amount of said judgments.

To the complaint filed by plaintiffs in error, an answer was filed by defendant in error, in which certain separate defenses were pleaded. The substance of these special defenses was, that Eden, the assured, at the time of the accident, was operating his automobile for the purpose of selling cattle and livestock in his capacity as a salesman, employed by another. It was further alleged in the special defenses, that after the issuance of the insurance policy, Eden was employed by another as salesman, and was so employed at the time of the accident. It was further alleged that this employment of the assured, in the capacity of a live-stock salesman, invalidated the policy; that the policy, as issued, stated that Eden's occupation was that of farming; that it was provided in a special endorsement, which was a part of the policy, that it should be a condition of liability under the policy that the assured "shall engage in no occupation other than farming throughout the term for which this policy is issued. In the event the named assured, without the written consent of the company endorsed hereon, changes his occupation or place of residence, or if the herein described motor vehicle is used for any other purpose other than ordinary farming and/or pleasure purposes, or if the assured violates any condition of this insurance, or knowingly permits the violation of any condition, then this policy ceases automatically and immediately becomes null and void." It was further alleged that the assured did violate this provision of the policy whereupon it became void. That by reason of the violation of the terms of the policy in this respect by Eden, there

was no liability to him, and no liability to the plaintiffs in error, under the policy. Plaintiffs in error filed a replication to this answer and to the special defenses contained therein. By their reply, they denied the material allegations contained in the answer and special defenses.

The cause was tried by a jury; the jury returned a verdict in favor of defendant in error. A motion for a new trial was filed by plaintiffs in error. The grounds on which the motion for a new trial was based, raised the questions that the verdict was against the weight of the evidence and contrary to law; that the jury misunderstood and disregarded the instructions; that the jury was guilty of improper conduct; that the court erred in giving instructions to the jury, and other grounds not necessary to be here noticed.

The court granted a new trial. From the order granting the new trial, defendant in error filed a petition for leave to appeal to the Appellate Court for the Second District; the appeal was allowed. That court reversed the order of the circuit court granting the new trial, and entered judgment on the verdict of the jury in favor of defendant in error, and against plaintiffs in error, for costs.

After a petition for rehearing was denied by the Appellate Court, plaintiffs in error sued out a writ of error from this court to review the judgment of the Appellate Court. On motion of plaintiffs in error, that court issued a certificate that there was fairly involved more than $1500, exclusive of costs.

In the assignment of errors attached to the record filed in this court, it is alleged that sections 77 and 92 of the Civil Practice act, under which the Appellate Court reviewed the order granting the new trial and reversed that order of the circuit court, and entered judgment on the verdict, violate various provisions of the constitution.

Defendant in error filed in this court a motion to dismiss on the ground that the constitutional questions were

not raised in the Appellate Court, were not debatable, and could not be urged in this court; this motion was taken with the case.

The constitutional questions raised relate to the power or jurisdiction of the Appellate Court to enter the judgment here reviewed. Until that judgment was entered, plaintiffs in error were not required to anticipate that the court would enter a judgment which they believed to be in excess of its jurisdiction. The failure on their part to anticipate the entry of such judgment cannot be regarded as estopping them from now urging objections to the jurisdiction of that court based on constitutional grounds. An objection to the power of the court to enter a judgment, inasmuch as it goes to the jurisdiction of the court, can be raised at any time after the judgment is entered. (*Toman v. Park Castles Apartment Bldg. Corp.* 375 Ill. 293; *People ex rel. Carr* v. *Psi Upsilon Fraternity,* 320 id. 326.) The right of this court to review constitutional questions first arising when the judgment of an Appellate Court is entered, is well settled, even though such questions were not raised in that court. (*Goodrich* v. *Sprague,* 376 Ill. 80; *Bagdonas* v. *Liberty Land and Investment Co.* 309 id. 103.) The motion to dismiss must, therefore, be denied.

It is here contended by plaintiffs in error, that the Appellate Court had no jurisdiction to review the order of the circuit court granting a new trial; that by reversing that order and entering a final judgment, the effect is to deny to plaintiffs in error due process of law, contrary to the constitution of the State of Illinois and the constitution of the United States.

Under this assignment and in support thereof, plaintiffs in error contend that section 77 of the Civil Practice act, which declares that an order granting a new trial shall be deemed a final order, and that an appeal therefrom may be granted by the Appellate Courts, violates article 3 of the constitution; that the determination of whether an

order is final or interlocutory, is a judicial question, which may not be constitutionally determined by the legislature; that an order granting a new trial is, in fact, interlocutory, and not final, and that a declaration of the legislature that it is a final order does not make it such.

It is further contended, that section 92 of the Civil Practice act, if applied to appeals from such orders, is invalid for the same reasons, and for the further reason that said section prescribes procedure on appeals from orders granting new trials different from that applicable to other appeals, in violation of section 29 of article 6 of the constitution; that the Appellate Court had no jurisdiction to enter a final judgment on the verdict, after having reversed the trial court's order granting a new trial; that in entering such judgment, the Appellate Court exercised original jurisdiction in violation of section 11 of article 6 of the constitution.

The question of whether the determination of the character of an order or judgment as to being final or interlocutory is a legislative or judicial question, and the effect of the attempt by the legislature, by section 77 of the Civil Practice act, to make an order granting a new trial a final order, is not decisive of this case and need not be here determined. The question is whether the legislature had the power to grant the right to appeal from such an order, regardless of whether it be considered as final or interlocutory, and whether it has properly done so by section 77 of the Civil Practice act. In the determination of this question, a review of several provisions of the constitution and the statutes will be helpful.

The primary object in construing a statute, is to ascertain the legislative intent expressed therein. (*People* v. *Illinois Merchants Trust Co.* 328 Ill. 223; *American Aberdeen-Angus Breeders' Ass'n* v. *Fullerton,* 325 id. 323; *Barnes* v. *City of Chicago,* 323 id. 203; *State* v. *Brush,* 318 id. 307.) In seeking the legislative intent, courts

should consider the language used, the object to be attained, or the evil to be remedied, and this may involve more than the literal meaning of the words used. (*Peabody* v. *Russell,* 301 Ill. 439.) When the words used, followed literally, lead to an absurd consequence or to a construction clearly not contemplated, this constitutes a sufficient reason to depart from the language used for the purpose of ascertaining the intent. (*Mitchell* v. *Lowden,* 288 Ill. 327.) A thing which is within the intention of a statute is within the statute, although not within its letter, and a thing within the letter is not within the statute unless it is within the intention. (*Peabody* v. *Russel, supra.*) Statutes must be so construed as to be given a reasonable construction, if possible. (*Friend* v. *Borrenpohl,* 329 Ill. 528; *Galpin* v. *City of Chicago,* 249 id. 554.) A statute, if possible, must be construed so as to give effect to all its provisions. (*People* v. *Price,* 257 Ill. 587.) In whatever language a statute may be expressed, it must be given a practical and common sense construction. (*People ex rel. Schaefer* v. *New York, Chicago and St. Louis Railroad Co.* 353 Ill. 518.) The intention of the lawmakers, in passing a statute, is to be found and given effect if not in violation of the constitution. (*Illinois Bell Telephone Co.* v. *Ames,* 364 Ill. 362.) It is a well known rule of statutory construction, that a statute must be interpreted according to the legislative intention, and not always according to the literal meaning of the language used. *People* v. *Lieber,* 357 Ill. 423.

Guided by these well settled rules of statutory construction, the intent of the legislature, in passing section 77 of the Civil Practice act, must be determined and given effect, unless such construction would lead to absurd consequences, or unconstitutional results.

The constitution confers power upon the legislature to create Appellate Courts and, with certain limitations, to prescribe their jurisdiction. (Constitution, sec. 11, art. 6.) Under the constitution, Appellate Courts have no original jurisdiction; their jurisdiction is appellate only. (*People*

*ex rel. Lydston* v. *Hoyne,* 262 Ill. 82; *People ex rel. Earle* v. *Circuit Court of Cook Co.* 169 id. 201.) Original jurisdiction cannot be conferred on such courts by statute. In *Herb* v. *Pitcairn,* 377 Ill. 405, and *Goodrich* v. *Sprague, supra,* we recently held certain portions of section 68 of the Civil Practice act unconstitutional, because they attempted to confer on Appellate Courts the right to enter a final judgment in cases of appeals from judgments *non obstante veredicto.* This was an unconstitutional attempt to confer original jurisdiction on Appellate Courts. In neither of those cases, however, was the question of the right to appeal from an order granting a new trial involved. No question was raised in either of those cases as to the constitutionality of any of the provisions of section 77 of the Civil Practice act.

Under the powers conferred, the Appellate Courts were created by an act approved on June 2, 1877. (Ill. Rev. Stat. 1941, chap. 37, par. 25.) By section 8 of that act (Ill. Rev. Stat. 1941, chap. 37, par. 32) the jurisdiction of such courts is prescribed and limited. It is there provided that the Appellate Courts created by the act "shall exercise Appellate jurisdiction only, and have jurisdiction of all matters of appeal or writs of error from the final judgments, orders or decrees of any of the circuit courts, or the superior court of Cook county, or county courts, or from the city courts, in any suit or proceeding at law, or in chancery, other than criminal cases, not misdemeanors, and cases involving a franchise or freehold, or the validity of a statute."

It will be seen that the jurisdiction conferred upon Appellate Courts, by section 8 of the Appellate Court act, is limited to matters of appeal or writs of error "from final judgments" in the cases enumerated in this section. This is the source and extent of the jurisdiction conferred by that act. This statute was not altered or changed until 1935, unless that was accomplished by section 77 of the Civil Practice act, which was approved on June 23, 1933. (Ill. Rev. Stat. 1941, chap. 110, par. 201.) By section 77

it was provided, "Appeals shall lie to the Appellate or Supreme Court, in cases where any form of review may be allowed by law, to revise the final judgments, orders or decrees of the circuit courts, the superior court of Cook county, the county courts, the city courts and other courts whose judgments, orders and decrees are reviewable therein, under such limitations and conditions as may be imposed by law and subject to such rules of court as may be established and promulgated under this chapter."

It will be noted that this provision in no way conflicts with the provisions of section 8 of the Appellate Court act. It is written in substantially the same words as the first sentence of the corresponding section of the Practice act of 1907. (Smith-Hurd Rev. Stat. 1933, chap. 110, par. 91.) This language simply grants the right of appeal allowed by the act from "the final judgments, orders or decrees" specified in section 8 of the Appellate Court act, and limits the right granted to appeals from final judgments, orders or decrees, as limited by the Appellate Court act. It also limits the right of appeal to "cases where any form of review may be allowed by law." It does not attempt to enumerate the cases which may be reviewed by the right of appeal there granted. It simply refers to all cases where any form of review may be "allowed by law." The only law to which the reference there made could apply, as to appeals to an Appellate Court, is section 8 of the Appellate Court act.

Reading this provision of section 77 with section 8 of the Appellate Court act to which it clearly refers, and which all rules of construction require us to do, we find that this section of the Civil Practice act allows appeals to an Appellate Court from final judgments, orders or decrees only, in the cases enumerated in section 8 of the Appellate Court act.

Up to this point, section 77 makes no attempt to enlarge or increase the powers or the jurisdiction of the Appellate Courts. It simply substitutes the form of appeal

provided in the Civil Practice act for other methods of review then in use. Such appeals are limited to final judgments in the cases enumerated in section 8 of the Appellate Court act. Neither is there any attempt to extend the right of appeal to interlocutory orders not falling within the designation of final judgments, specified in both section 77 of the Civil Practice act and section 8 of the Appellate Court act. This constitutes the background from which the language which follows in section 77 must be construed. That section then declares that, "An order granting a new trial shall be deemed to be a final order, but no appeal may be taken therefrom, except on leave granted by the reviewing court, or by a judge thereof in vacation on notice to adverse parties and petition presented to the reviewing court within thirty days after the entry of the order."

The questions presented are: Did the legislature, by the language used in section 77 intend to give the right of appeal from an order granting a new trial? The jurisdiction of the Appellate Courts, being limited by section 8 of the Appellate Court act, to the review of final judgments, orders and decrees, did the legislature by the passage of section 77, amend section 8, by implication, so as to confer on such courts the power to review orders granting new trials? By the language used in section 77, all it did was to attempt to make an order granting a new trial a final judgment within the meaning of the first sentence of said section, and the language of section 8 of the Appellate Court act, so as to come within the jurisdiction of such courts, as there limited. Section 77 makes no provision for appeals from interlocutory orders. The language used, however, indicates an intent to make an order granting a new trial an appealable order, although such intent is expressed only in the attempt to make such an order a final order. It expressed the clear intention to make such an order one within the class of judgments reviewable by the Appellate Courts, under the Appellate Court act. Instead of

increasing the jurisdiction of Appellate Courts to review orders granting new trials, by appropriate words, it attempted to include such orders in the class of cases of which jurisdiction was already vested in the Appellate Courts by the existing statute.

It cannot be doubted that the legislature had the power to provide for appeals to an Appellate Court from interlocutory orders, as well as from final judgments. (*Town of Vandalia* v. *St. Louis, Vandalia and Terre Haute Railroad Co.* 209 Ill. 73.) It must be conceded that the legislature had such power, under section 11 of article 6 of the constitution. The legislature may confer upon the Appellate Courts such jurisdiction as it deems necessary or proper. The only limitation imposed by the constitution is, that the jurisdiction conferred must be appellate and not original. The legislature has exercised that power by the enactment of the Appellate Court act. Under section 11 of article 6 of the constitution, it had the power to confer jurisdiction on Appellate Courts to review, by appeal, interlocutory orders, as well as final judgments.

Waiving the question of the effect of the attempt of the legislature to designate an interlocutory order as a final judgment, the clear intent expressed in section 77 of the Civil Practice act was to provide for appeals from orders granting new trials, regardless of the limitations in section 8 of the Appellate Court act. It also clearly appears that the legislature intended that section 77 of the Civil Practice act and section 8 of the Appellate Court act should both be effective, and should operate and be construed together.

By section 94 of the Civil Practice act, sections 10 and 12 of the Appellate Court act were expressly repealed. (Ill. Rev. Stat. 1941, chap. 110, par. 218.) No mention is made in the Civil Practice act of section 8 of the Appellate Court act. That it was the intention to change or enlarge the jurisdictional provisions contained in section 8

of the Appellate Court act, is further evidenced by the fact that section 8 was amended by an act which became effective on June 28, 1935. (Laws of 1935, p. 695; Ill. Rev. Stat. 1941, chap. 37, par. 32.) In this amendment, no change was made in that portion of the section relating to the jurisdiction of the Appellate Courts. The only changes made were with reference to appeals from Appellate Courts to this court. This amendment was approved two years after the passage of the Civil Practice act, and eighteen months after its effective date. Section 77 was also amended by an act which became effective on July 1, 1941. (Laws of 1941, vol. 2, p. 464.) By this amendment no change was made in the provisions here under consideration. This is the last legislative expression. The amendment of the Appellate Court act of 1935, and the amendment of the Civil Practice act of 1941, in this respect, left both sections exactly as they existed with the passage of the Practice act in 1933.

There is no constitutional objection to the construction that section 8 of the Appellate Court act was amended by implication by section 77 of the Civil Practice act, so that both sections may stand, and both be operative and effective to their full extent, except as the former is modified or enlarged by the latter. A subsequent statute which amends a prior act by implication is not invalid under section 13 of article 4 of the constitution, because its title does not state that it is an amendatory act. The title need only state the general purposes, and not the legal effect of the act. (*Union Trust Co.* v. *Trumbull,* 137 Ill. 146; *Timm* v. *Harrison,* 109 id. 593; *Geisen* v. *Heiderich,* 104 id. 537; *People* v. *Wright,* 70 id. 388.) Subsequent statutes which change the law, are to be considered amendatory where possible, in order to preserve both the later and earlier acts. *City of Rockford* v. *Schultz,* 296 Ill. 254; *Hacken* v. *Isenberg,* 288 id. 589; *Village of Ridgway* v. *Gallatin County,* 181 id. 521.

It follows that the constitution, having conferred upon the legislature power to create Appellate Courts and prescribe their jurisdiction, and in the exercise of such power, the legislature having placed a limitation on such jurisdiction to a review of final judgments by section 8 of the Appellate Court act, section 77 of the Civil Practice act must be construed as conferring on such courts the additional power and jurisdiction to review, by appeal, orders of the courts enumerated in said section 8, granting new trials, whether such orders be regarded as interlocutory or final. This construction renders operative all the provisions of both sections, and clearly effectuates the intent and purpose expressed in section 77 to provide for appeals from orders granting new trials.

The legislature having granted to Appellate Courts, by section 77 of the Civil Practice act, the power to review orders granting new trials, such courts have the power to review such orders. In this respect the Appellate Court properly exercised the power conferred upon it. In the exercise of such powers, however, the Appellate Courts are limited by the constitution. The legislature could not confer original jurisdiction on an Appellate Court.

By section 77 the only additional power conferred on Appellate Courts was to review orders granting new trials. It may either affirm, or reverse and set aside, such an order. When an Appellate Court reverses an order granting a new trial, it has no power to enter a final judgment. (*Herb* v. *Pitcairn, supra; Goodrich* v. *Sprague, supra.*) When the Appellate Court reversed the order granting a new trial in this case, its powers and jurisdiction were exhausted. There was nothing else before the court. Section 92 of the Civil Practice act does not confer on Appellate Courts power to enter a final judgment where it reverses the order of the trial court granting a new trial, and where no such final judgment has been entered by the trial court. In such cases it can enter no order except to either affirm or reverse the

order granting the new trial, and remand the cause to the trial court for further proceedings in due course. The cause will then proceed in the trial court according to law.

The judgment of the Appellate Court reversing the order of the trial court granting a new trial, was within its jurisdiction, and was a valid judgment. Its judgment on the verdict was beyond its jurisdiction and was void. No judgment had ever been entered by the trial court on the merits, which could be reviewed by the Appellate Court. It could not enter judgment on the verdict where no final judgment had been entered by the trial court.

Because of the provisions of section 77 of the Civil Practice act, we do not pass on any question concerning the correctness of the ruling of the Appellate Court reversing the order of the circuit court granting a new trial.

The judgment of the Appellate Court entered on the verdict of the jury is reversed and the cause remanded to that court, with directions to remand the cause to the circuit court, with directions to overrule the motion for a new trial.

*Reversed and remanded, with directions.*