(No. 26664.—

MARIE MERLO, Admx., *et al.*, Defendants in Error, *vs.* PUB-
LIC SERVICE COMPANY OF NORTHERN ILLINOIS *et al.*,
Plaintiffs in Error.

*Opinion filed November 17, 1942—Rehearing denied Jan. 13, 1943.*

302

GARDNER, MORROW, FOWLER & MERRICK, and KENT J. OWENS, (WALTER M. FOWLER, of counsel,) for plaintiff in error Public Service Company of Northern Illinois; CASSELS, POTTER & BENTLEY, (RALPH F. POTTER, L. H. VOGEL, GEORGE C. BUNGE, and H. G. MARSHALL, of counsel), for plaintiff in error Charles M. Porter Company.

BARASA, RINELLA & BARASA, (JOSEPH BARBERA, and HARRY G. FINS, of counsel,) for defendants in error.

Mr. JUSTICE SMITH delivered the opinion of the court:

This case was brought in the circuit court of Cook county by Marie Merlo, as administratrix of the estate of Caesar Merlo, deceased, and Frances Salvato, as administratrix of the estate of John Salvato, deceased, as plaintiffs. Public Service Company of Northern Illinois and Charles M. Porter Company were named as defendants. The suit was under the Injuries Act to recover damages

for the deaths of the respective husbands of plaintiffs. For convenience we will refer to the parties in this opinion as plaintiffs and defendants the same as they were designated in the trial court.

Plaintiffs filed one complaint consisting of two counts. The injuries alleged to have caused the deaths arose out of the same accident. The first count of the complaint sets forth the claim of Marie Merlo, as administratrix, and the second count the claim of Frances Salvato as administratrix. Each count alleges distinct but separate acts of negligence against each defendant. Following the separate charges of negligence against each defendant in both counts, it is alleged that the injuries were sustained "by reason of the negligence and carelessness of said defendants."

The deceased husbands of plaintiffs were electrocuted April 15, 1936, while engaged as W. P. A. workers in the construction of a sewer in the village of Maywood. Defendant Charles M. Porter Company was the owner of a drag-line machine, operated by Leo Wagner, which was used in excavating for the sewer. Defendant Public Service Company of Northern Illinois maintained an electric distribution line in the parkway between the sidewalk and the curb of Oak street near its intersection with Tenth avenue in the village, where the fatal injuries occurred. This line was used for the transmission of electric current furnished by said defendant to the village of Maywood and its inhabitants. The machine belonging to the Charles M. Porter Company was operated in such manner that the crane or boom came in contact with the distribution line of the Public Service Company with the result that an electric current of high voltage was conducted through a steel cable attached to the boom. Plaintiffs' intestates lost their lives by coming in contact with this cable.

The jury found both defendants guilty and assessed the damages of Frances Salvato at $4000 and of Marie Merlo at $2500. At the close of plaintiffs' evidence both defend-

ants moved for directed verdicts of not guilty. These motions were denied. The motions were renewed at the close of all the evidence. The court reserved a ruling on said motions and submitted the case to the jury. After the verdicts were returned both defendants filed motions for judgment notwithstanding the verdicts. The motion of defendant Public Service Company of Northern Illinois was in the alternative for a new trial in the event motion for judgment was denied. This motion for new trial was afterwards and before judgment, by leave of court, withdrawn. The court entered judgment on the verdicts against defendant Charles M. Porter Company, but set aside the verdicts as to Public Service Company of Northern Illinois and entered judgment in its favor, notwithstanding the verdicts. Charles M. Porter Company appealed from said judgment against it to the Appellate Court for the First District. The plaintiffs prosecuted a cross appeal from the judgment entered notwithstanding the verdicts in favor of the Public Service Company. The Appellate Court affirmed the judgment against Charles M. Porter Company and reversed the judgment nothwithstanding the verdicts in favor of Public Service Company of Northern Illinois. As to that defendant the cause was remanded with directions to the trial court to enter judgment on the verdict. Said last-mentioned defendant has sued out a writ of error to review the judgment of the Appellate Court. It contends that paragraphs 1(e) and 1(f) of section 92 of the Civil Practice Act (Ill. Rev. Stat. 1941, chap. 110, par. 216,) and paragraph 3(c) of section 68 of said Civil Practice Act (Ill. Rev. Stat. 1941, chap. 110, par. 192,) which it claims purport to give the Appellate Court power to enter the judgment against said Public Service Company remanding the cause with directions to enter judgment on the verdicts, are unconstitutional. It further contends that the constitutional question arose for the first time in the Appellate Court, and

consequently this court has jurisdiction to review that question only on writ of error. The defendant Charles M. Porter Company brought the case here by petition for leave to appeal, which has been allowed. The petition for leave to appeal was, on motion, ordered to stand as an answer to the writ of error.

The defendant Public Service Company argues that the cross appeal of plaintiffs presented to the Appellate Court no questions of fact; that the only question presented to that court was the question of law as to whether or not the trial court erred in entering judgment notwithstanding the verdicts; that the Appellate Court, in passing. upon that question and reversing the judgment of the trial court, properly exercised its appellate jurisdiction. It is further argued that when it gave directions to the trial court to enter judgment on the verdicts against said defendant, it in effect and of necessity, considered and ruled upon matters not before it for consideration. It is urged that the. Appellate Court in directing the trial court to enter judgment on the verdicts attempted to exercise original jurisdiction in violation of the constitution; that by directing final judgment it settled all questions, both of law and of fact, against said defendant; that the defendant was thereby deprived of the right to have a motion for a new trial passed upon by the trial court; that the right to have the trial court pass on a motion for a new trial is a necessary and indispensable element of due process of law and the right of trial by jury guaranteed by the constitution; that paragraphs 1(e) and 1(f) of section 92 of the Civil Practice Act, which provide that a reviewing court on appeal may, in its discretion, and on such terms as it deems just, draw inferences of fact and give any judgment and make any order which ought to have been given or made, and make such other and further orders and grant such relief as the case may require, purport to authorize the judgment entered by the Appellate Court; that

said paragraphs of the statute constitute an attempt to confer original jurisdiction on appellate courts in violation of the constitution; that this court cannot hold the aforesaid directions of the Appellate Court to be error, or cannot affirm said judgment of the Appellate Court without passing upon the validity of these paragraphs of said statute; and therefore a constitutional question is directly involved. Said defendant also assigns as error, but does not argue, the alleged unconstitutionality of paragraph 3(c) of section 68 of the Civil Practice Act.

Plaintiffs filed a motion to dismiss on the ground that no constitutional question in regard to the validity of a statute is involved. They also contend that defendant Public Service Company, by its withdrawal of the motion for new trial, waived the same, and therefore the Appellate Court, in directing judgment on the verdicts, was exercising appellate, and not original jurisdiction, as claimed by said defendant. This motion was taken with the case.

The questions raised by said Public Service Company, relate to the power or jurisdiction of the Appellate Court to enter the judgment against it here reviewed. Until that judgment was entered defendant was not required to anticipate that the court would enter a judgment which defendant believed to be in excess of its jurisdiction. The failure on its part to anticipate the entry of such judgment cannot be regarded as estopping it from urging constitutional objections not arising prior to the entry of said judgment. An objection to the power of the court to enter a judgment, inasmuch as it goes to the jurisdiction of the court, can be raised at any time after judgment is entered. (*Scott* v. *Freeport Motor Casualty Co.* 379 Ill. 155; *Toman* v. *Park Castles Apartment Building Corp.* 375 id. 293; *People ex rel. Carr* v. *Psi Upsilon Fraternity,* 320 id. 326.) The right of this court to review constitutional questions first arising when the judgment of an appellate court is entered is well settled, even though such

questions were not raised in that court. (*Scott* v. *Freeport Motor Casualty Co. supra; Goodrich* v. *Sprague,* 376 Ill. 80; *Bagdonas* v. *Liberty Land and Investment Co.* 309 id. 103.) If the judgment of an appellate court raises a constitutional question for the first time, this court has jurisdiction to review that judgment by writ of error. Such jurisdiction is conferred on this court by section 11 of article VI of the constitution. *Cornell* v. *Board of Education,* 366 Ill. 253; *Bagdonas* v. *Liberty Land and Investment Co. supra; Hallberg* v. *Goldblatt Bros. Inc.* 363 Ill. 25.

The constitutionality of a statute cannot be said to be involved so as to give this court jurisdiction where the issues can fairly be determined without reference to the assailed statute. (*Shilvock* v. *Retirement Board,* 375 Ill. 68; *Prudential Ins. Co.* v. *Richman,* 364 id. 234; *Illinois Central Railroad Co.* v. *Chicago and Great Western Railway Co.* 246 id. 620.) Defendant Public Service Company concedes that, in a proper case, an appellate court has power to remand a cause to the trial court with directions to enter a specific judgment; that such action is not an exercise of original jurisdiction. It is not contended by said defendant that the judgment directed by the Appellate Court would have been improper, had the defendant waived its right to have the trial court pass on a motion for a new trial. In the case of *Gnat* v. *Richardson,* 378 Ill. 626, the Appellate Court reversed the trial court's judgment notwithstanding the verdict. The cause was not remanded. The Appellate Court entered judgment for the amount of the verdict with interest from its date. This court on appeal affirmed the judgment of the Appellate Court. In that case appellants in their brief stated that no error was assigned upon the failure to remand the cause to the trial court for consideration of a motion for new trial; that no motion for a new trial was made by them, nor did they have any intention of filing a motion

for new trial. Had defendant Public Service Company estopped itself in this case from insisting upon its right to have the trial court pass on the motion for new trial, then the Appellate Court undoubtedly would have had the authority to direct the trial court to enter judgment on the verdicts. But, defendant insists, it did not waive the right by withdrawal of its motion for new trial. It contends that the judgment of the Appellate Court therefore deprives it of rights guaranteed by the constitution and denies to it due process of law.

This court has held that where a judgment or decree is attacked on the ground that its enforcement will deprive the one against whom it is sought to be enforced, of some constitutional right, as the right of trial by jury or the taking of property without due process of law, no constitutional question is presented which will give this court jurisdiction on that ground. In such case the question is the validity of the judgment or decree. This is not a constitutional question. (*Perlman* v. *Thomas Paper Stock Co.* 378 Ill. 238; *De La Cour* v. *De La Cour,* 363 id. 545; *Genslinger* v. *New Illinois Athletic Club,* 332 id. 316; *Albrecht* v. *Omphghent Township,* 324 id. 200; *Cooper* v. *Palais Royal Theatre Co.* 320 id. 44.) The constitutional requirement of due process of law is not a guaranty that the courts shall not commit error in the trial of causes or a guaranty against erroneous and unjust decisions by courts which have jurisdiction of the parties and the subject matter. If errors are committed, or erroneous and unjust decisions are rendered, they may be corrected in the manner provided by law for the correction of such errors. A mere error in entering a judgment or decree does not deprive the losing party of the benefit of due process of law. (*Genslinger* v. *New Illinois Athletic Club, supra; Tarallo* v. *Hubbell Fertilizer Co.* 281 Ill. 286.) The power of a reviewing court, in proper cases, to remand a cause to the trial court with directions for the

entry of a specific judgment has been admitted and exercised from the time Illinois first became a State up to the present time.

The attack on the Appellate Court judgment in this case on the ground that that judgment deprives said defendant of its right to have the trial court pass on a motion for a new trial as provided in paragraph 1 of section 68 of the Civil Practice Act, does not necessarily require this court to decide whether the Appellate Court in directing said judgment was purporting to act under the authority of paragraphs 1(e) and 1(f) of section 92 of the Civil Practice Act, nor to be concerned with, or pass upon, the validity of said statutes.

In order to give this court jurisdiction to review a judgment of the Appellate Court on writ of error, there must be a constitutional question involved and such question must have arisen in the Appellate Court for the first time. (*Cuneo* v. *City of Chicago,* 372 Ill. 473.) It is therefore apparent that the proper method for the review of judgments of the character here involved is by appeal and not by writ of error. Nevertheless, Rule 28 of this court provides that if a writ of error be improvidently sued out in a case where the proper method of review is by appeal, this alone shall not be a ground for dismissal. If the issues sufficiently appear upon the record before the court the case may be considered "as if the proper method of review had been employed." Inasmuch as we allowed an appeal in this case on petition of Charles M. Porter Company, one of the defendants, we will treat the case as if the proper method of review had been employed by both defendants. The motion to dismiss will be denied.

This brings us to a consideration of the question raised by defendant Public Service Company of Northern Illinois, whether the Appellate Court erred in setting aside the judgment, notwithstanding the verdicts, entered in the trial court; also the question raised by defendant Charles M.

Porter Company whether the Appellate Court erred in affirming the judgment of the trial court against it. These are proper questions to be passed upon and disposed of in this case. (*Goodrich* v. *Sprague, supra.*) The Civil Practice Act and Rule 22 of this court require the court to be governed by the same rules in passing upon a motion for judgment notwithstanding the verdict as govern it in passing upon a motion for a directed verdict. The power of the court is the same in both cases, the reason being that the motions are, in effect, the same. These motions present only a question of law as to whether, when all of the evidence is considered, together with all reasonable inferences from it in its aspect most favorable to the plaintiffs, there is a total failure or lack of evidence to prove any necessary element of the plaintiffs' case. If there is any evidence tending to sustain every element of the plaintiffs' case necessary to be proved to sustain the cause of action, it is immaterial upon which side the evidence is introduced. No contradictory evidence or other evidence of any kind or character will, in such case, justify a directed verdict or a judgment notwithstanding the verdict, except uncontradicted evidence of facts consistent with every fact which the evidence for the plaintiff tends to prove, but showing affirmatively a complete defense. (*Nelson* v. *Stutz Chicago Factory Branch, Inc.,* 341 Ill. 387.) This requires consideration of the evidence, but precludes any examination of the weight of the evidence in order to determine its preponderance. It is wholly immaterial on which side the weight of the evidence preponderates. (*Nelson* v. *Stutz Chicago Factory Branch, Inc., supra.*) If there is in the record evidence which, standing alone, tends to prove the material allegations of the complaint, a motion for a directed verdict, or for judgment notwithstanding the verdict, should be denied, even though upon the entire record the evidence may preponderate against the party in opposition to such motion, so that a verdict in his favor could not

stand when tested by a motion for a new trial. *Walaite* v. *Chicago, Rock Island and Pacific Railway Co.* 376 Ill. 59.

It is fundamental that plaintiffs could recover only by proof of the specific charges of negligence in their complaint and that it must further appear that such negligence proximately contributed to or caused the deaths for which damages are sought. It is also fundamental that proof of negligence consists in showing a duty. to the person injured, a breach of that duty, and an injury proximately resulting from such breach. Here the duty charged against the Public Service Company was its failure "properly to insulate, guard and protect said wires with a durable insulation and not allow the same to be or become bare and unprotected, and in a sagging condition on said poles." The negligence charged against it was that it. did not properly insulate, guard and protect said wires, and "wilfully and negligently permitted said wires to be and become bare and unprotected in places, and in a sagging condition on said poles, and to remain in this condition on said date and for a long time prior thereto, although it knew or by the exercise of reasonable care should have known of said condition, and should have known that in case persons in the public street there should come in contact with said wires, they were likely to be injured or killed." The question, then, to be determined first is, did defendant Public Service Company owe a duty to decedents to insulate said wires and not allow them to become bare and unprotected and in a sagging condition on said poles? This court, in the case of *Austin* v. *Public Service Company of Northern Illinois*, 299 Ill. 112, in discussing the duty as to the required care in the transmission and distribution of electric current, said: "Electricity is a silent, deadly and instantaneous force, and one who uses it for profit is bound to exercise care corresponding to the dangers incident to its use. With the advance of civilization electricity has become a necessity, and in order to make it useful to man

it must be carried from place to place. The restrictions governing the handling of this commodity by public or private corporations or by individuals must, in view of its commercial and domestic importance, be reasonable. One engaged in the business of manufacturing, transmitting and distributing electric current is only required to exercise such care and caution as a person of ordinary prudence might reasonably be expected to exercise in the handling of such a silent and dangerous agency under similar circumstances, and if he places his wires in such a position that they will not inflict injury on a person in the exercise of his rights and privileges while he is using due care and caution for his own safety he has fully performed the duty which the law imposes upon him. Practically all wire used in the transmission and distribution of electricity is insulated with a two-ply or three-ply braid weatherproof covering. This is for the purpose of protecting it against atmospheric conditions and is not for the purpose of protecting persons coming in contact with it from shock. These wires can be sufficiently insulated or protected by the use of proper materials so that all danger from shock is eliminated. Persons handling electricity must protect the public against danger by the proper insulation of its wires where the public is likely to come in contact with them. But this duty does not extend to the entire system. Persons engaged in the transmission of electricity are not insurers of the safety of the public, but they are bound to know the dangers incident to handling electricity and to guard against such dangers by the exercise of care commensurate with them."

In the case of *Rowe* v. *Taylorville Electric Co.* 213 Ill. 318, it was said that "a company operating wires carrying a dangerous current of electricity owes a duty to exercise reasonable care to prevent injury to others, wherever they have a right to go. The duty extends to every place where persons have a right to be, whether for busi-

ness, convenience or pleasure." This court in the last cited case further said in its discussion of the duty of an electric company toward a telephone employee while stringing telephone wires in close proximity to an electric wire twenty-five feet above the street level: "Electricity is a silent, deadly and instantaneous force, and one who uses it for profit is bound to exercise care corresponding to the dangers incident to its use. One duty is the insulation of its wires, but that duty does not extend to the entire system. No duty of that kind is imposed on the owner on his own premises as to trespassers or bare licensees who are neither invited upon the premises nor there for purposes of business with the owner. The defendant was not bound to assume that persons would come upon its private premises who were not invited there or brought there by business and thereby expose themselves to injury. But the streets of the city were not the private premises of the defendant. The streets belong to the public, and the public, generally, have a right to use them. As a matter of fact, the defendant must be held to have anticipated that the public would use the streets as they had a right to do, and also the telephone employees would be working in the streets in the business of that company and might come in proximity to its wires in attending to their duties. The defendant was not an insurer of the safety of the public, but it was bound to know the dangers incident to the use of the streets by it and to guard against such dangers by the exercise of care commensurate with them."

From the very nature of its business, an electric company using highly charged wires owes the legal duty toward every person who, in the exercise of a lawful occupation in a place where he has a legal right to be, whether for business, pleasure or convenience, is liable to come in contact with the wires to see that such wires are properly placed with reference to the safety of such persons and are properly insulated. (18 Am. Jur. p. 485.) This is

nothing more than the ordinary care required under the circumstances when put into practice. The reason for requiring insulation and vigilance in maintaining the wires in proper condition is the deadly and dangerous power of the current carried along such wires.

Defendant Public Service Company argues that it owed no duty to insulate its wires over its entire system; that it is only required to insulate at places where it might reasonably anticipate that persons in the exercise of ordinary care might come in contact with its wires; that since the wires at the lowest point were still more than twenty feet above the ground as required by the rules of the Commerce Commission, fixing proper standards and types of construction for safeguarding the public against injury from electric wires, it had violated no duty to decedents. It cannot be said that it was not to be reasonably anticipated that men would likely be working in the streets, with modern machinery, such as was used in this instance, for the purpose of making repairs to or digging ditches for the laying of sewers. It is undisputed that decedents were rightfully and lawfully in the use of the street in their work on this Maywood sewer job at the time of their deaths. It would be contrary to the rules and principles heretofore announced by this court in regard to the care required to be exercised by those engaged in the transmission of electricity, to all persons wherever they have a lawful right to be, to hold that the defendant Public Service Company owed these decedents no duty to insulate and properly maintain their wires so as to safeguard them from injury or death by coming in contact therewith.

Proof of compliance with the safety rules of the Commerce Commission constitutes evidence tending to show due care but it is not conclusive on the question of negligence. The distance of the wires from the ground alone did not create the dangerous condition. Its combination with the alleged negligence in failing to keep the wires

insulated created the danger which came into instantaneous operation the moment the crane boom came in contact with the wire at a point where the evidence shows that the weatherproof covering was frayed and hanging loose from the wires. In our opinion there was sufficient evidence in the record tending to prove the negligence charged against said defendant to warrant the submission of the case to the jury, if it was further established by the evidence that such negligence was the proximate cause of the injury.

Defendant Public Service Company argues, however, that its alleged negligence, if any, did nothing more than furnish a condition making the injury possible; that the subsequent independent act of the crane operator in permitting the boom to come in contact with the wires was the efficient intervening cause of the injury; that this act of the operator of the machine broke the causal connection between the original wrong, if any, of said defendant; that the negligence of this defendant in failing to properly insulate and maintain its wires was the remote, and not the proximate, cause of the injury; that the subsequent, intervening act of the crane operator was the proximate cause of the fatal injuries to decedents.

This court in the case of *Illinois Central Railroad Co., v. Oswald,* 338 Ill. 270, has clearly announced the rule applicable in this case. It was there said that if the negligence charged does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury where the subsequent act is an intervening efficient cause which breaks the causal connection between the original wrong and the injury, and itself becomes the proximate or immediate cause. The cause of an injury is that which actually produces it, while the occa-

sion is that which provides an opportunity for the causal agencies to act. (*Briske* v. *Village of Burnham,* 379 Ill. 193.) The test that should be applied in all cases in determining the question of proximate cause is whether the first wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's own negligence. (*Seith* v. *Commonwealth Electric Co.,* 241 Ill. 252.) If the act of a third party is the immediate cause of the injury and is such as in the exercise of reasonable diligence would not be anticipated and the third person is not under the control of the one guilty of the original wrong, the connection is broken and the first act or omission is not the proximate cause of the injury. There may be more than one proximate cause of an injury. But if two wholly independent acts, by independent parties, neither bearing to the other any relation or control, cause an injury by one creating the occasion or condition upon which the other operates, the act or omission which places the dangerous agency in operation is the efficient intervening cause that breaks the causal connection and makes the other act or omission the remote and not the proximate cause of the injury.

Can it be assumed that defendant Public Service Company, or any reasonably prudent person would have anticipated that as a result of the lack of insulation and the sagging of the wires, the crane operator would so operate the boom that it would come in contact with wires without necessary precaution to prevent it from becoming charged with the high-voltage current for the protection of the workmen against electrocution when they took hold of the cable? Would any one reasonably anticipate that as a natural and probable result of the Public Service Company's alleged negligence, the crane operator would negligently swing the crane to such height and in such manner as to cause it to come in contact with the wires and thus

cause the injuries complained of? Can it be said that the crane operator's negligence was the natural and probable consequence of the lack of insulation and the sagging wires?

What constitutes the proximate cause of an injury in a particular case is ordinarily a question of fact to be determined from all the attending circumstances, and it can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them. (*Phillabaum* v. *Lake Erie and Western Railroad Co.,* 315 Ill. 131.) Manifestly and undoubtedly, neither the lack of insulation nor the sagging wires did anything more than furnish a condition, and the intervening, independent act of the crane operator was the efficient and proximate cause of the fatal injuries to decedents. There is no evidence in the record tending to show otherwise. The trial court properly entered judgment in favor of the defendant Public Service Company of Northern Illinois, notwithstanding the verdict.

The case as to the other defendant, Charles M. Porter Company, presents but one question on this record: Was Wagner, the operator of the machine at the time of the occurrence, an employee or servant of the Charles M. Porter Company, so as to render said defendant liable for his negligence? That question was submitted to the trial court by the Porter company's motion for a directed verdict and by its motion for judgment notwithstanding the verdict. It was the main issue in the trial court insofar as the Porter company was concerned. This was the sole question presented to the Appellate Court. The argument here is the alleged error of the Appellate Court in refusing to hold, as a matter of law, that the operator of the crane was not, at the time of the occurrence, the servant of said defendant.

Caesar Merlo and John Salvato, for whose wrongful deaths this action was brought, were, as hereinbefore stat-

ed, employed by the W. P. A. on a project to construct a sewer system for the village of Maywood. The village was to furnish a drag-line machine with an operator. An oral agreement was entered into between the village and the Porter company, whereby the Porter company was to furnish a machine and a man to operate it for use in the construction of the sewer. The village was to pay the Porter company $6 per hour for the use of the machine and the operator. The Porter company was to make the necessary repairs on the machine and the village was to furnish the gas and oil used in its operation. As the work progressed the Porter company presented its bills; they were paid by the village. The Porter company paid the operator.

The answer of the Porter company denying that the crane was operated by it through its employees and servants raised an issue of fact. (*Shannon* v. *Nightingale,* 321 Ill. 168; *Amalgamated Roofing Co.* v. *Travelers Ins. Co.* 300 id. 487; *Franklin Coal and Coke Co.* v. *Industrial Com.* 296 id. 329.) Wherever evidence must be introduced to maintain an issue of fact made by the pleadings, controverted questions of fact are involved, which include not only evidentiary facts but ultimate facts, even though there is no conflict in the testimony or the evidence may be agreed upon and embodied in a stipulation of facts. (*Navratel* v. *Curtis Door and Sash Co.* 290 Ill. 526; *Bolton* v. *Johnson,* 163 id. 234; *Louisville, New Albany and Chicago Railway Co.* v. *Red,* 154 id. 95; *American Exchange Nat. Bank* v. *Chicago Nat. Bank,* 131 id 547; *Shannon* v. *Nightingale, supra.*) The question as to whether or not the relationship of master and servant exists is dependent upon certain facts and circumstances. These facts include the question of the hiring, the right to discharge, the manner of direction of the servant, the right to terminate the relationship, and the character of the supervision of the work done. Unless these facts clearly appear, the re-

lationship cannot become purely a question of law. (*Thiel* v. *Material Service Corp.* 364 Ill. 539.) Under the common law an employee in the general employment of one master may, with his consent, be loaned to another and become the employee of the master to whom he is loaned. The test is whether or not the employee becomes wholly subject to the control and direction of the second employer, and free, during the temporary period, from the control of the original master. (*Forest Preserve District* v. *Industrial Com.* 357 Ill. 389.) It does not clearly appear from the evidence that Wagner, during the period of his employment in the operation of the machine on the Maywood sewer job, was wholly free from the control of his original master, Charles M. Porter Company. The president of the company testified that he had visited the sewer job; that he was on the job once or twice a week. The determination of the ultimate fact of whether or not Wagner was the servant or agent of the defendant Charles M. Porter Company involves a conclusion derived from a consideration of this and other evidentiary facts, in connection with the application of principles of law in a consideration of the evidence. The question thus becomes a mixed question of law and fact on which the verdict of the jury and the judgment entered thereon, when affirmed by the Appellate Court, are conclusive and not subject to review by this court. *Stevenson* v. *Earling,* 290 Ill. 565; *Dillon* v. *Knights and Ladies of Security,* 244 id. 202; *McGovney* v. *Village of Melrose Park,* 241 id. 142; *Roemheld* v. *City of Chicago,* 231 id. 467; *Shannon* v. *Nightingale, supra.*

Defendant Charles M. Porter Company, in support of its contention that the Appellate Court erred in refusing to hold, as a matter of law, that the operator of the crane was not at the time of the occurrence the servant of the Charles M. Porter Company, argues that this question of agency was for the court and not the jury, and that the

Appellate Court misconstrued the holding in the case of *Densby* v. *Bartlett,* 318 Ill. 616, relied upon extensively by the Appellate Court in its opinion. The inquiry of this court in cases appealed from the Appellate Court can only be whether there was error committed in rendering the judgment complained of. In actions at law this inquiry is confined to errors of law. While this court will examine the opinion of the Appellate Court to determine whether that court predicated its judgment solely on an erroneous conception of law, what that court may assign as reasons for its judgment is not a matter of concern here. Our duty is to determine the correctness of the judgment reviewed. (*Kee & Chappell Dairy Co.* v. *Pennsylvania Co.* 291 Ill. 248.) Where there is evidence on the trial tending to prove the issues of fact in favor of the successful party, and the Appellate Court affirms the judgment, this court must treat such affirmance as a finding of the facts as they were found by the trial court. An affirmance of a judgment by the Appellate Court implies a finding of the facts in the same way they were found by the trial court and such finding is conclusive on this court. (*Alphin* v. *Working,* 132 Ill. 484; *Sconce* v. *Henderson,* 102 id. 376.) While in the *Bartlett case, supra,* certain principles of law were recited as to the test in ascertaining the existence of the relationship of master and servant, in the later case of *Shannon* v. *Nightingale, supra,* this court expressly stated that it was not intended by the *Bartlett case* to overthrow the rule announced in the decisions that the verdict of the jury on mixed questions of law and fact, such as the relation of master and servant, approved by the trial court and the Appellate Court, is conclusive and not subject to review by this court. We cannot say upon the record in this case that the evidence was insufficient, as a matter of law, to justify submitting this issue of agency to the jury. Consequently, the determi-

nation of this question by the jury, approved by the judgment of the trial court, and affirmed by the Appellate Court, precludes any review of the question by this court.

This judgment of the circuit and Appellate courts in favor of the plaintiffs is affirmed as to the defendant Charles M. Porter Company, a corporation. The judgment of the Appellate Court in favor of the plaintiffs as to the defendant, Public Service Company of Northern Illinois, a corporation, is reversed, and the judgment of the circuit court of Cook county in favor of said defendant is affirmed.

*Affirmed in part and reversed in part.*