TALANDIS CONSTRUCTION CORPORATION, Plaintiff-Appellee and Cross-Appellant, *v.* ILLINOIS BUILDING AUTHORITY, Defendant-Appellant and Cross-Appellee.

First District (2nd Division)   No. 76-939

Opinion filed May 23, 1978.—Rehearing denied June 26, 1978.

Dennis M. O'Brien, of Chicago (Schippers, Betar, Lamendella & O'Brien, of counsel), for appellant.

John A. Cook and Charles A. Gilmartin, both of Chicago (Quinn, Jacobs & Barry and Gilmartin, Wisner & Hallenbeck, Ltd., of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

On August 13, 1971, plaintiff, Talandis Construction Corporation (Talandis), filed an accounting action for money owing from a public bid construction contract. Following a bench trial, the court entered a decree and judgment order assessing damages against defendant, Illinois Building Authority (IBA), in the amount of $437,841.81. IBA appealed therefrom after the denial of its post-trial motion to set aside the decree and judgment order or for a new trial. IBA contends that the court erred by rewriting the parties' contract and by awarding damages based upon the "total job cost" theory. In its cross-appeal Talandis contends that the court erred by failing to allow overhead and profit on all of its direct costs.

After oral argument of this cause, IBA moved to file additional authority relating to the jurisdiction of the trial court. IBA maintained that the trial court was without jurisdiction and that the decree-judgment order entered by the trial court was a nullity. Therefore, IBA concluded that the order must be vacated and the cause remanded to the trial court with directions to transfer the cause to the Illinois Court of Claims. In its response to said motion Talandis argued that IBA had supplied no reasoning or analysis in support of the extraordinary relief requested and that it was without foundation. We disagree and find it unnecessary to comment on the merit of the issues raised for our review.

The evidence purported to show that, after competitive public bidding, Talandis was awarded a contract to construct a Small Animal Clinic Complex for the Champaign-Urbana campus of the University of Illinois. IBA and Talandis entered into a two-year time contract on January 24, 1968, which required Talandis to use the Critical Path Method

or Network of establishing the dates for the start and completion of the essential components of the work. At trial Talandis allegedly proved that sometime prior to August 16, 1968, IBA, through its architect and others, so disrupted and discoordinated an important portion of the on-going construction that it materially breached its contract. Talandis contended that the contract as completed was not the contract it had undertaken to perform. At the completion of a complex trial, the court entered judgment for Talandis; and the appeal and cross-appeal followed.

## I.

■■ Article IV, section 26, of the 1870 Illinois Constitution provided that "[t]he State of Illinois shall never be made defendant in any court of law or equity." (Ill. Const. 1870, art. IV, §26.) Pursuant to that provision, claims against the State were required to be brought under the Court of Claims Act. (Ill. Const. 1970 Ann., art. XIII, §4, Constitutional Commentary, at 292-93 (Smith-Hurd 1971), citing Ill. Rev. Stat. 1969, ch. 37, par. 439.1 *et seq.*) The question as to whether or not a particular State agency came within the old constitutional prohibition from suit could not be decided by applying a convenient rule of thumb, but, for the most part, each case had to be resolved by individual judicial determination. (F. Spiegel, The Illinois Court of Claims: A Study of State Liability 69 (1962).) The 1970 Illinois Constitution provides that "[e]xcept as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Ill. Const. 1970, art. XIII, §4.) Moreover, effective January 1, 1972, the State of Illinois may not be made a defendant or party in any court, except as provided in the Court of Claims Act. Ill. Rev. Stat. 1972, ch. 127, par. 801.

■■ The Illinois Court of Claims has exclusive jurisdiction to hear and determine certain enumerated matters, including "[a]ll claims against the State founded upon any contract entered into with the State of Illinois." (Ill. Rev. Stat. 1971, ch. 37, par. 439.8(b).) IBA argues in the instant case that the judgment must be vacated and the cause remanded with directions to transfer the cause to the Illinois Court of Claims because IBA is a State agency which can only be sued in that court. In support of that contention IBA draws our attention to the recent case of *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (4th Dist. 1978), 58 Ill. App. 3d 28, 30, 373 N.E.2d 772, which declared in part that IBA is now a State agency. While the case is factually distinguishable from the one at bar, we agree that IBA is a State agency which may be sued only in the Illinois Court of Claims.

By Public Act 77-1995 the General Assembly passed the Capital Development Board Act which became effective on July 10, 1972, and was amended, effective October 1, 1973. (Ill. Rev. Stat. 1973, ch. 127, par.

771 *et seq.*) The purposes of the Act are: (1) *to build or otherwise provide* hospital, housing, penitentiary, administrative, recreational, *educational,* laboratory, parking, environmental equipment *and other capital improvements for use by the State;* (2) to conduct continuous studies into the costs of building such facilities; (3) to conduct research on improvements in choice and use of materials, construction methods, construction costs, etc.; (4) to review and recommend periodic revisions in building and construction codes; and (5) to advise state agencies and units of local government on request on any matters related to the purposes of the Act. (Ill. Rev. Stat. 1973, ch. 127, pars. 774.01 through 774.05.) The term "state agency" means and includes "each officer, department, board, commission, institution, body politic and corporate of the State *including the Illinois Building Authority * * *."* (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 127, par. 773.) Although claims against IBA arising from contracts entered into after the passage of the Act must clearly be pursued in the Court of Claims, Talandis contends that its claim was properly litigated in the circuit court.

■■ Talandis notes that IBA failed to raise its jurisdictional challenge when the case was filed on August 13, 1971, when judgment was rendered on December 10, 1975, and when IBA's appeal was filed on April 9, 1976. If this is to suggest that IBA has waived the issue of subject matter jurisdiction, Talandis is mistaken. There can be no waiver of jurisdiction of the subject matter where the trial court lacked jurisdiction to enter the order appealed from. (*Toman v. Park Castles Apartment Building Corp.* (1940), 375 Ill. 293, 302, 31 N.E.2d 299.) Subject matter jurisdiction cannot be conferred upon a court by consent of the parties or by their acquiescence (*City of Chicago v. Shayne* (1963), 27 Ill. 2d 414, 418, 189 N.E.2d 324) and, therefore, lack of subject matter jurisdiction may be raised at any time (*Michelson v. Industrial Com.* (1941), 375 Ill. 462, 469-70, 31 N.E.2d 940). The question may be raised in the trial court, after the entry of judgment or in the reviewing courts. (*Jarrett v. Jarrett* (1953), 415 Ill. 126, 128, 112 N.E.2d 694; *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 307, 45 N.E.2d 665; *Scott v. Freeport Motor Casualty Co.* (1942), 379 Ill. 155, 160, 39 N.E.2d 999.) Thus, the question is properly before us.

■■ If Talandis is suggesting that a change of forum would be an unfair surprise, it is again mistaken. The prior related case of *Talandis Construction Corp. v. Illinois Building Authority* (1st Dist. 1974), 23 Ill. App. 3d 929, 321 N.E.2d 154, arose from this case but involved a different issue. In affirming the trial court's dismissal of IBA's third-party complaint against the Board of Trustees of the University of Illinois, we held that IBA could only prosecute its third-party action sounding in tort in the Court of Claims. (23 Ill. App. 3d 929, 933.) This alone must have informed

Talandis that there were potential jurisdictional problems inherent in its own contract action. Furthermore, Talandis cannot claim unfair surprise merely because neither its opponent, nor the court apprised it of the fact that the trial had proceeded in the absence of jurisdiction. As we have discussed above, the challenge to jurisdiction could have been asserted at any time.

■■ Talandis further contends that even if the jurisdiction of the circuit court was reduced by statutory change, such change did not affect the pending case at bar because the statute did not expressly so provide. (20 Am. Jur. 2d *Courts* §150 (1965).) In other words, Talandis apparently maintains that the enactment of the Capital Development Board Act did not provide for retroactive application. While as a general principle a statute is not to be given retroactive effect (*In re District of Columbia Workmen's Compensation Act* (D.C. Cir. 1976), 554 F.2d 1075, 1079; *De Rodulfa v. United States* (D.C. Cir. 1972), 461 F. 2d 1240, 1246-47), that construction may be required by explicit language or by necessary implication (*Bruner v. United States* (1952), 343 U.S. 112, 117 n. 8, 96 L. Ed. 786, 790 n. 8, 72 S. Ct. 581). We think the new act necessarily implied that it was to apply to pending cases and that the circuit court's jurisdiction over the cause ceased. Having reached this conclusion, we can only reiterate the comment by Justice Holmes: "Of course it does not matter that these cases had gone to a higher court. When the root is cut the branches fall." *Smallwood v. Gallardo* (1927), 275 U.S. 56, 62, 72 L. Ed. 152, 156, 48 S. Ct. 23.

■■ Unlike those cases where a statue clearly grants jurisdiction and a later statute repeals the earlier one or another statute clearly divests the court of jurisdiction (*Remington v. Smith* (1867), 1 Colo. 53; *City of Seattle v. O'Connell* (1897), 16 Wash. 625, 48 P. 412; *Kelley v. State* (1916), 94 Ohio St. 331, 114 N.E. 255; *Fort Smith Gas Co. v. Kincannon* (1941), 202 Ark. 216, 150 S.W.2d 968; *Wheless v. Kelly* (La. App. 1961), 131 So. 2d 142), here the Act simply declared IBA a State agency. As such agencies are considered "arms of the state" suable only in the Court of Claims (*Williams v. Medical Center Commission* (1975), 60 Ill. 2d 389, 393-94, 328 N.E.2d 1; *Tanner v. Board of Trustees* (4th Dist. 1977), 48 Ill. App. 3d 680, 683-84, 363 N.E.2d 208; *Kane v. Board of Governors* (4th Dist. 1976), 43 Ill. App. 3d 315, 322, 356 N.E.2d 1340), we necessarily conclude that IBA, too, must be sued in that court. We might assume that the Act applied prospectively only if, by law, the circuit court had concurrent jurisdiction with the Court of Claims over this action (*cf. Kruse v. Wilson* (1875), 79 Ill. 233, 238; *State ex rel. Renick v. County Court* (1866), 38 Mo. 402, 408); but no concurrency of jurisdiction exists. Further, there is nothing in the statutory scheme of the Capital Development Board Act which shows an

intent to withdraw circuit court jurisdiction only for determinations made since a certain date. Compare *Merge v. Troussi* (3d Cir. 1968), 394 F.2d 79, 83, with *Kennedy v. Palmer* (1856), 72 Mass. (6 Gray) 316.

More importantly, the Act's declaration that IBA is a State agency implied that actions against IBA founded in contract had to be pursued in the Court of Claims. This does not mean that Talandis cannot recover on the contract in question, only that the remedy must be pursued in the Court of Claims. A change of forum here will neither destroy an existing cause of action, nor create a new liability for past events. (*Cohen v. Beneficial Industrial Loan Corp.* (1949), 337 U.S. 541, 554, 93 L. Ed. 1528, 69 S. Ct. 1221.) It is a well established rule that no one has a vested right in a particular remedy or mode of procedure for the redress or grievances, and the legislature may change these, and the changed procedure may be applied to pending causes. (*Merlo v. Johnson City & Big Muddy Coal & Mining Co.* (1913), 258 Ill. 328, 338, 101 N.E. 525.) While the legislature cannot pass retrospective law impairing the obligation of a contract or depriving one of a vested right, a vested right is something more than a mere expectation based upon an anticipated continuance of the existing law. *People ex rel. Eitel v. Lindheimer* (1939), 371 Ill. 367, 373, 21 N.E.2d 318.

We think the rationale of *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673, supports our conclusion. In *Nelson* the defendant contended that the new long-arm statute could not be applied to him because the cause of action arose before the effective date of the provisions authorizing extraterritorial service on nonresident defendants. Our supreme court responded:

"Insofar as the claim is grounded in Illinois law it is fully disposed of by our recent decision in *Ogdon v. Gianakos*, 415 Ill. 591, 597 (1953), where we said: 'The law applicable in the State of Illinois is that there is no vested right in any particular remedy or method of procedure, and that, while generally statutes will not be construed to give them a retroactive operation unless it clearly appears that such was the legislative intent, nevertheless, when a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether the suit has been instituted or not, unless there is a saving clause as to existing litigation. (*Chicago and Western Indiana Railroad Co. v. Guthrie*, 192 Ill. 579; *Peoples Store of Roseland v. McKibbin*, 379 Ill. 148; *Board of Education v. City of Chicago*, 402 Ill. 291.) This statute embodies no saving clause as to exiting litigation. It merely establishes a new mode of obtaining jurisidiction of the person of

the defendant in order to secure existing rights, which are unaffected by this amendment. As a change which affects merely the law of procedure, there can be no valid objection to enforcing the existing cause of action under this new procedure.' See also *Orlicki v. McCarthy*, 4 Ill. 2d 342, 347-48 (1954)." (11 Ill. 2d 378, 382-83.)

Likewise in the instant case the Act in question embodies no saving clause as to existing litigation. It merely declares IBA a State agency which by necessary implication means that claims against it must be litigated in the Court of Claims. The change in IBA's status only establishes a new forum in which Talandis may pursue its existing rights; and Talandis may not validly object that it justifiably acted in reliance on the prior law. 11 Ill. 2d 378, 383.

■■■ A suit brought against an officer or agency with relation to matters in which the defendant represents the State in action and in liability, even though the State is not a party to the record, is in effect a suit against the State. (*Scoa Industries, Inc. v. Howlett* (1st Dist. 1975), 33 Ill. App. 3d 90, 94, 337 N.E.2d 305; *Struve v. Department of Conservation* (3d Dist. 1973), 14 Ill. App. 3d 1092, 1093-94, 303 N.E.2d 32.) This action is such a suit against the State; it must be pursued in the Court of Claims. Albeit unknowingly, the court here acted in the absence of jurisdiction. Jurisdiction in a particular case is not only the power of the court to hear and determine it, but also the power to render the particular judgment entered, and every act of the court beyond its jurisdiction is void. *Thayer v. Village of Downers Grove* (1938), 369 Ill. 334, 339, 16 N.E.2d 717.

For the reasons stated, the order and judgment of the circuit court of Cook County are hereby reversed.

Reversed.

STAMOS, P. J., and BROWN, J., concur.