UNITED PACIFIC INSURANCE
COMPANY, Plaintiff,

v.

CAPITAL DEVELOPMENT BOARD OF
the STATE OF ILLINOIS and Arrow
General Contractors, Inc., an Illinois
corporation, Defendants.

No. 79 C 874.

United States District Court,
N. D. Illinois, E. D.

Dec. 13, 1979.

Randall L. Marmor of Gilmartin, Wisner
& Hallenbeck, Chicago, Ill., for plaintiff.

Paul C. Sheils, Chicago, Ill., for defendant
Arrow Gen. Contractors, Inc.

Michael J. Hayes, Asst. Atty. Gen., State
of Illinois, Chicago, Ill., for defendant Capi-
tal Development Bd. of state of Illinois.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiff, United Pacific Insurance Co.
("United"), brings this diversity action
against the Illinois Capital Development
Board ("CDB") and Arrow General Con-
tractors, Inc. ("Arrow"), seeking a declara-
tory judgment as to the parties' rights and
obligations under two construction perform-
ance bonds. Plaintiff is a Washington cor-
poration with its principal place of business
in the State of Washington. CDB identifies
itself as an agency of the State of Illinois.
Arrow is an Illinois corporation with its
principal place of business in Illinois. CDB
has filed a motion to dismiss based upon
two jurisdictional objections: (1) CDB is an
agency of the State of Illinois and the State
of Illinois is not a citizen for purposes of
diversity jurisdiction under 28 U.S.C.
§ 1332; and (2) this action is barred by the
Eleventh Amendment to the United States
Constitution. While agreeing that we lack
diversity jurisdiction over CDB, we will
deny CDB's motion and exercise pendent
jurisdiction.

The relevant facts are as follows. Plain-
tiff is in the business of selling performance
bonds to entities engaged in various phases
of the construction industry. CDB is re-
sponsible for the construction of the many
capital facilities required by the State of
Illinois in performing its governmental
functions. Arrow is a private general con-
tracting firm which is currently under con-
tract to construct several such capital facili-
ties. In the normal course of awarding
construction contracts, the State of Illinois,
through the Capital Development Board,
requires and receives from each contractor

a performance bond issued by a reputable commercial surety. Arrow tendered two performance bonds to the state in connection with the two contracts Arrow is now performing. These two bonds, which total about $2,500,000.00 and at least facially name United as surety, are the subject of the underlying dispute.

On or about November 15, 1978, CDB notified Arrow that it was dissatisfied with Arrow's performance on one of the two construction projects. CDB said that Arrow's failure to remedy the situation could result in termination of the contract, and that CDB would then look to the surety, United, for performance. CDB sent a copy of this notification to United, which thereupon requested the state to provide it with copies of the bond in question. Upon receipt of those copies, United informed CDB that the bonds were forged and disavowed any obligation to CDB under them. CDB advised United that it would continue to look to United for performance under the bonds. United filed the action before us seeking a resolution of the question of the alleged forgery and a declaration of the parties' rights and obligations.

Title 28 U.S.C. § 1332 provides, in relevant part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy . . . is between—

(1) citizens of different States;

The rule is well established that neither a state nor its alter ego is a "citizen" for purposes of diversity jurisdiction. *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894); *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). The central issue before us, then, is whether the Capital Development Board is the alter ego of the State of Illinois, thus making the state the real party in interest. *State Highway Commission v. Utah Construction Co.*, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929); *Krisel v. Duran*, 386 F.2d 179 (2d Cir. 1967). For the following reasons, we conclude that CDB is an alter ego of the State of Illinois.

We turn first to an examination of the state statute under which the Capital Development Board was created and now functions. The CDB's creation and purpose is set forth in Ill.Rev.Stat. ch. 127, §§ 774.-01–774.05 (1977). Its purposes include the building of capital facilities for the State of Illinois with funds appropriated by the Illinois General Assembly. § 774.01. The Members of the Board are appointed by the Governor, by and with the consent of the Senate. § 775. All employees of CDB (other than technical or engineering personnel) are hired under the Illinois Personnel Code, are members of the Illinois retirement system, are civil servants under the state civil service code, and are governed by all other laws relating to state employment. § 778. The Board is empowered to acquire land or interests therein for the building of capital facilities for the State of Illinois, as authorized by the General Assembly and with funds appropriated to it by the legislature. § 779.01. The CDB is authorized to enter into contracts on behalf of the State of Illinois, and all such contracts and purchases are governed by the Illinois Purchasing Act. §§ 779.02, .07.

In addition to appropriations from the General Assembly, some of the funds administered by the CDB in fulfilling its purpose are acquired through the sale of bonds under the Capital Development Bond Act, Ill.Rev.Stat. ch. 127, §§ 751 *et seq.* The CDB does not administer or control those funds as an entity separate and apart from the State of Illinois. Rather, the bonds are used for specific purposes formulated by the General Assembly, and it is the State of Illinois that is authorized to issue, sell and provide for the retirement of the bonds. § 753. The Governor controls the issuance of the Bond and executes them on behalf of the state. §§ 754, 755. The proceeds from the sale of the bonds are at all times subject to the General Assembly's control and appropriation. § 757. The proceeds are held in the Capital Development Fund of the State Treasury. § 758. The bonds are the general obligations of the State of Illinois

and the full faith and credit of the state is pledged in support of each bond. § 760.

From the foregoing review of the controlling statute, it is clear that the CDB is not independent of the State of Illinois in either its operation or funding. The decision as to whether an agency is an alter ego of a state for diversity purposes depends, however, not only upon an analysis of the controlling statute, but also upon the opinions of state courts bearing upon the status of the agency. *See Miller-Davis Co. v. Illinois State Highway Authority*, 567 F.2d 323, 330 (7th Cir. 1977). In *People ex rel. Resnik v. Curtis & Davis*, 58 Ill.App.3d 28, 15 Ill.Dec. 426, 373·N.E.2d 772 (4th Dist. 1978), the court held that the Capital Development Board Act, §§ 757, 773, made the Illinois Building Authority ("IBA") a state agency rather than a legal entity separate and apart from the state. In so deciding, the court emphasized that the Capital Development Board under the Act "is to assume functions previously delegated to the IBA, and is to oversee the IBA and other state agencies in their performance of other functions." 58 Ill.App.3d 28, 30, 15 Ill.Dec. 426, 428, 373 N.E.2d 772, 774. The Capital Development Board would clearly be unable to confer such state agency status upon IBA if the Board were not a state agency and alter ego itself. *See also, Talandis Construction Co. v. Illinois Building Authority*, 60 Ill. App.3d 715, 18 Ill.Dec. 84, 377 N.E.2d 237 (1st Dist. 1978).

In support of its argument that CDB is not the alter ego of the State of Illinois, the plaintiff places primary reliance upon the decision of the Seventh Circuit in *Miller-Davis Co. v. Illinois State Toll Highway Authority*, 567 F.2d 323 (7th Cir. 1977). In that case, the court concluded that the Illinois State Toll Highway Authority was not the alter ego of the state, and that a suit against the Authority was therefore not barred by the Eleventh Amendment. We believe that *Miller-Davis* is distinguishable from the case before us. The court found in *Miller-Davis* that the Illinois Toll Highway Authority Fund—the account from which the Authority drew its monies—was sufficiently segregated from the general public funds in the Illinois State Treasury,

that any judgment against the fund would not be a judgment against the state for Eleventh Amendment purposes. The Authority was required to repay the state the initial appropriations given to create the Authority. The Authority issued bonds to make those repayments. The state expressly disclaimed any liability for the bonds issued by the Authority. Ill.Rev.Stat. ch. 121, § 100–17 (1975). In the case before us, however, the bonds which contribute to the Capital Development Fund are issued by the State of Illinois rather than CDB, and the bonds are the general obligations of the state, not CDB. Such facts indicate a much closer nexus between agency funds and the general public funds in the State Treasury than was present in *Miller-Davis*.

A further basis for distinguishing *Miller-Davis* is the Seventh Circuit's reliance upon a decision by the Illinois Supreme Court, holding that the Authority's predecessor, the Illinois Toll Highway Commission, was not a state agency but an independent legal entity. *People v. Illinois Toll Highway Commission*, 3 Ill.2d 218, 120 N.E.2d 35 (1954). The court in *Miller-Davis* emphasized the significance of that state court opinion:

> Especially when a state supreme court does not extend immunity but, rather, holds that an entity is not to be deemed the state for purposes of sovereign immunity, we think the federal courts must pay careful attention to the state opinion.

567 F.2d at 330. By contrast, we are faced with state court opinions indicating that the Capital Development Board is the alter ego of the State of Illinois.

In its memorandum in opposition to CDB's motion to dismiss, plaintiff stresses that since it is seeking declaratory relief rather than damages, a judgment in this case would not directly affect the public funds of the State of Illinois. Plaintiff apparently intends that argument to apply to both the diversity and the Eleventh Amendment issues raised by CDB. The issue of whether CDB is an alter ego of the State of Illinois for diversity purposes, however, is distinct from the issue of whether this suit is barred by the Eleventh Amendment. *Krisel v. Duran*, 386 F.2d 179 (2d

Cir. 1967). The fact that plaintiff's suit is one for declaratory judgment is not relevant to the threshold legal issue of what CDB's status is for purposes of determining diversity jurisdiction. In the cases cited by plaintiff to support its contention that we have jurisdiction to hear claims against a state agency for declaratory relief, the courts had independent bases for subject matter jurisdiction and discussed the declaratory judgment issue only in the context of an Eleventh Amendment bar. *Massachusetts General Hospital v. Sargent*, 397 F.Supp. 1056 (D.C.Mass.1975) (federal question jurisdiction); *Byram River v. Village of Port Chester*, 394 F.Supp. 618 (D.C.N.Y. 1975) (federal question jurisdiction); *Ihlenfeldt v. State Election Board*, 425 F.Supp. 1361 (D.C.Wis.1977) (federal question jurisdiction).

We should point out that, contrary to the assumptions of both United and CDB, the Eleventh Amendment does not apply to the factual situation before us. United is seeking a declaration that it is not liable as surety on the performance bonds because its signature was forged. A judgment that United is not liable on the bonds would not result in any monetary recovery by United against CDB (*i. e.* the state), but only in CDB's having to look elsewhere for performance. Indeed, if CDB had sued United for performance, the Eleventh Amendment would not have applied to preclude United from raising forgery as a defense. In such a case, as here, United would simply be seeking to relieve itself from liability—not to recover damages from the State Treasury. *See generally, Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

Having decided that we lack diversity jurisdiction over CDB, the question now becomes whether, as CDB suggests, we must dismiss this action. For the following reasons, we believe that expeditious disposition of this controversy will best be achieved if we exercise pendent party jurisdiction over CDB and allow United to proceed against Arrow and CDB in the federal forum.

We should first address CDB's argument in support of its motion to dismiss. CDB asserts that once we conclude that we lack diversity jurisdiction over CDB, we must not only dismiss as to CDB but also dismiss the entire action. CDB bases that assertion on Rule 19 of the Federal Rules of Civil Procedure, arguing that CDB must be joined in the federal litigation because Arrow and United cannot adjudicate United's liability under the bonds without impairing CDB's ability to protect its interest as a named beneficiary. Since joinder of CDB is required but not possible without destroying complete diversity between the parties, CDB concludes, the entire action must be dismissed for lack of an indispensable party.

Rule 19 involves a two-step analysis.[1] *Bio-Analytical Services v. Edgewater*, 565

---

1. Rule 19, Fed.R.Civ.P. provides:

(a) Persons to Be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can

F.2d 450 (7th Cir. 1977). First, under 19(a), the court must initially determine whether a party not joined is one "to be joined if feasible." If such a person can be joined and his presence would not destroy jurisdiction, he is to be joined. If a person can be joined, it is unnecessary to determine whether he is an indispensable party within the meaning of subsection (b). 3A Moore's Federal Practice ¶ 19.07–1[4].

The second step of Rule 19 is taken only after the court determines that a person *cannot* be made a party because joinder would deprive the court of jurisdiction. Under 19(b) the inquiry is whether "in equity and good conscience" the court should proceed among the parties who remain before it. The term "indispensable" in 19(b) is used in a conclusory sense. *Id.* That is, if after weighing the four factors in 19(b), the court decides to dismiss, the party is deemed indispensable. If the court weighs the factors in favor of proceeding in its absence, the party is not indispensable.

The foregoing analysis of Rule 19 indicates that once we determine that CDB can be joined without depriving this court of jurisdiction and should be joined, it is irrelevant whether United should be allowed to proceed against Arrow in CDB's absence—that is, to examine whether CDB is an "indispensable party" under 19(b). Accordingly, the inquiry that ends our analysis is whether CDB can be joined—that is, whether a jurisdictional basis other than diversity exists for joining CDB—and should be joined.

Joinder is feasible in this case on the basis of pendent party jurisdiction. The threshold decision for the modern pendent jurisdiction doctrine is *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Court in *Gibbs* held that in cases arising under federal law, a federal district court has "power" to entertain a claim between the same parties based upon state law, provided that the state and federal claims are closely enough related that, "without regard to their federal or state character," the plaintiff "would

ordinarily be expected to try them all in one judicial proceeding . . . ." *Id.* at 725, 86 S.Ct. at 1138. Pendent jurisdiction is a doctrine of discretion and "[i]ts justification lies in considerations of judicial economy, convenience and fairness to litigants . . ." *Id.* at 726, 86 S.Ct. at 1139. Although *Gibbs* did not involve the addition of a pendent party, "numerous decisions throughout the courts of appeals since *Gibbs* have recognized the existence of judicial power to hear pendent claims involving pendent parties where 'the entire action before the court comprises but one constitutional "case" ' as defined in *Gibbs*." *Moor v. County of Alameda*, 411 U.S. 693, 713, 93 S.Ct. 1785, 1797–1798, 36 L.Ed.2d 596 (1973); *see e. g., Almenares v. Wyman*, 453 F.2d 1075, 1083–1085 (2d Cir. 1971); *Leathers' Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 809–810 (2d Cir. 1971).

Unlike the situation in *Gibbs*, the underlying jurisdiction between United and Arrow is based upon diversity rather than the existence of a federal question. We are aware that recent Supreme Court decisions have raised some doubts regarding the appropriateness of pendent party and ancillary jurisdiction in diversity cases. *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *see generally*: Comment, "Limiting Federal Ancillary and Pendent Jurisdiction in Diversity Cases," 64 Iowa L.Rev. 930 (1979); Currie, David P., "Pendent Parties," 45 U.Chi.L.Rev. 753 (1978). The *Zahn* and *Kroger* decisions, however, are distinguishable from the case before us. In *Zahn*, four plaintiffs brought a class action for pollution damage to themselves and others similarly situated. Federal jurisdiction was based upon diversity, and each of the four plaintiffs asserted claims individually exceeding the statutory minimum of $10,-000.00. Strictly applying the $10,000.00 jurisdictional amount requirement of 28 U.S.C. § 1332, the Court held that pendent jurisdiction could not be used to join those class

---

be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plain-

tiff will have an adequate remedy if the action is dismissed for nonjoinder.

members whose claims did not independently satisfy the $10,000.00 minimum. In *Kroger*, the Court held that pendent and ancillary jurisdiction do not permit a plaintiff to assert a claim over a co-citizen impleaded under Fed.R.Civ.P. Rule 14 by a defendant in a diversity case. In so holding, the Court placed primary reliance upon the *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), interpretation of 28 U.S.C. § 1332 requiring complete diversity: that is, each defendant must be a citizen of a state different from that of each plaintiff. *Kroger, supra*, 437 U.S. at 373, 98 S.Ct. 2396.

The *Zahn* and *Kroger* decisions cannot be read so broadly as to throw a blanket prohibition over the use of pendent party jurisdiction in diversity cases. Rather, we believe that those cases stand for the more limited rule that pendent party and ancillary jurisdiction should not be used to defeat the amount in controversy and complete diversity requirements of 28 U.S.C. § 1332. *See* 3A Moore's Federal Practice ¶ 20.07[5.02]. Neither requirement is defeated by our joinder of CDB. The amount in controversy is well in excess of $10,-000.00. Nor is complete diversity destroyed. The Court in *Kroger* emphasized that the § 1332 requirement that the "matter in controversy" be between "citizens of different states" means, strictly, that "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Kroger, supra*, at 373, 98 S.Ct. at 2403. The joinder of CDB would not contravene that rule, since CDB, as we have held, is not a citizen for diversity purposes and thus is not a co-citizen of plaintiff United.

Also significant to our decision to join CDB is the fact that United is seeking a declaratory judgment against Arrow and CDB, not money damages. The joinder of CDB would not, therefore, violate the Eleventh Amendment immunity which CDB enjoys as an alter ego of the State of Illinois. *Massachusetts General Hospital v. Sargent*, 397 F.Supp. 1056 (D.C.Mass.1975). The instant case is thus distinguishable from the situation present in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), where the Supreme Court refused to allow pendent jurisdiction to join a claim against a county in a § 1983 action against county officials. The Court emphasized that allowing pendent jurisdiction would violate the then-existing interpretation of 42 U.S.C. § 1983 that barred suits against a governmental subdivision.[2]

Compelling reasons exist for exercising pendent jurisdiction in the case before us. United's claims against Arrow and CDB involve common questions of law and fact. Joinder of CDB would fully serve the considerations of judicial economy, convenience and fairness to the litigants.[3] If we were

---

**2.** The Supreme Court has since held in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that political subdivisions are amenable to suit under 42 U.S.C. § 1983.

**3.** The judicial economy rationale for exercising pendent jurisdiction is also a basis for Rule 19(a)(1), which requires joinder where the absence of a party makes it impossible to accord complete relief to those already parties. The Seventh Circuit, quoting with approval the Advisory Committee Notes on Rule 19(a), has emphasized that Rule 19(a)(1) "furthers the interest not only 'of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter.'" *Evergreen Park N. & C. Home, Inc. v. American Equity Assurance Co.*, 417 F.2d 1113, 1115 (7th Cir. 1969); *Gottlieb v. Vaicek*, 69 F.R.D. 672, 677 (N.D.Ill.1975). If we were to allow United to proceed against Arrow in federal court without

CDB, United might obtain a declaratory judgment that the bonds were forged. However, such relief in the federal court in CDB's absence would not be complete, since the judgment would not resolve United's obligations vis à vis CDB. CDB could still pursue United in the state court. Neither the interest of United in complete relief in the federal action nor the public interest in avoiding repeated lawsuits on the subject matter would be served in CDB's absence.

We should note that CDB apparently invokes 19(a)(2) rather than 19(a)(1) in arguing that CDB is a "person to be joined if feasible." That is, CDB argues it has an interest in the bonds and is so situated that the disposition of the action in its absence may impair its ability to protect that interest. We do not believe that 19(a)(1) is applicable to CDB, since CDB could protect its "interest" by proceeding in state court if it were dismissed from this action.

to dismiss as CDB urges us to, this litigation would begin all over again in the state courts. Given the considerable amount of time and energy we have already expended in deciding just the jurisdictional issues in this case, we believe that the benefits of judicial economy served by keeping this litigation before us far outweigh the costs of starting up again in the state courts. *Le-Beau v. Libbey-Owens-Ford Co.*, 484 F.2d 798 (7th Cir. 1973); *Provident Tradesmens Bank & Trust Co.*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

Moreover, it is not at all clear that United could proceed against CDB and Arrow in one state court action. Without deciding the question, we think that separate proceedings in the Illinois Court of Claims and the Circuit Court might be necessary. *See* Ill.Rev.Stat. ch. 37, § 439.8; *H. Sternberg & Co. v. Bond*, 30 Ill.App.3d 874, 333 N.E.2d 261 (1975). Thus, the federal court may be the only forum in which this case can be resolved in a unitary fashion.

For the foregoing reasons, CDB's motion to dismiss is denied.