ROY STROM EXCAVATING AND GRADING COMPANY, Plaintiff and Counterdefendant-Appellee, v. MILLER-DAVIS COMPANY, Defendant and Counterplaintiff-Appellee and Separate Appellant (The Illinois Building Authority, Defendant and Counterdefendant-Appellant).

First District (4th Division)   No. 85—0986

Opinion filed November 6, 1986.—Rehearing denied December 29, 1986.

Dennis M. O'Brien Law Offices, of Chicago, for appellant Illinois Building Authority.

Peter M. Sfikas and Larry R. Eaton, both of Peterson, Ross, Schloerb & Seidel, of Chicago, for appellant Miller-Davis Company.

No brief filed for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Illinois Building Authority (IBA), defendant, counterdefendant, appeals from that portion of the trial court's order that granted the claims filed against it by Miller-Davis Company (Miller-Davis), defend-

ant-counterplaintiff, and Roy Strom Excavating and Grading Company, Inc. (Strom), plaintiff-counterdefendant. Miller-Davis appeals that part of the trial court's order that granted Strom's claims against it and denied its counterclaims against Strom.

The sole issue presented for review by IBA is whether the Court of Claims has exclusive jurisdiction to hear claims filed against it that arose from the contract between it and Miller-Davis.

Miller-Davis presents the following arguments for review: (1) whether the court erred in granting Strom's request for prejudgment interest; (2) whether exculpatory clauses in the contract take precedence over a change-conditions clause in the contract between it and Strom; (3) whether pertinent provisions of the contract required Strom to perform a soil analysis; and (4) whether Strom is responsible for extra costs incurred (by Miller-Davis) due to Strom's alleged failure to perform backfilling, pursuant to terms of the contract.

We affirm in part and reverse in part.

This lawsuit concerns claims arising from the construction of an instructional unit at the College of Du Page in Glen Ellyn. On July 24, 1970, IBA, as owner, awarded Miller-Davis the general contract to construct the unit. Miller-Davis then subcontracted the excavating and backfilling work to Strom for $575,000, pursuant to a written contract.

Upon its commencement of work on the project, Strom immediately encountered unforeseen soil problems. Poor soil conditions on the jobsite continued to plague the project, precipitating a substantial increase in the amount of time, labor, materials, and equipment estimated to complete the project. As a result of Strom's delay in completing its portion of the project, other parts of the project were also delayed.

Testimony at trial revealed that discovery of peat and unstable soil conditions was unexpected by all parties concerned. Miller-Davis' project superintendent, Harry Langlois, testified that in analyzing the contract documents and the borings, he did not see anything indicating peat pockets anywhere. Similarly, John Coletta, Miller-Davis' project engineer, testified that the unstable soil conditions were not foreseen by Miller-Davis because they did not appear on the soil-boring logs supplied by IBA.

G.F. Murphy & Associates, not a party to this action, was hired to design the building in question. G.F. Murphy engaged Soil Testing Services, not a party to this action, to perform subsurface-soil borings, tests, and analyses on the property that was to become the building site. IBA supplied the boring logs to bidders for the general

contract. Upon awarding the general contract, the results of the soil-boring logs were incorporated into the contract between IBA and Miller-Davis. Miller-Davis, in turn, supplied the soil-boring logs to bidders for its excavation and backfilling subcontract. Strom was awarded the subcontract and the results of the soil-boring logs were incorporated into the contract between Strom and Miller-Davis.

Due to the unstable soil conditions, Strom made changes in material use, equipment use, and excavating procedures. The job was structured by Strom in accordance with the information provided on the soil-boring logs, which Miller-Davis furnished. Thus, the soil-boring logs were the primary source in determining the cost of completing the project, what would be required to complete it, and how it would be completed.

As a result of the extra costs incurred due to the unstable soil conditions, Strom, pursuant to a change-conditions clause in the contract, requested additional compensation from Miller-Davis. Miller-Davis did grant Strom some additional compensation, but not all it had requested. The record is not clear as to whether the additional compensation was granted pursuant to the change-conditions clause.

Miller-Davis requested Strom to compensate it for extra costs incurred due to Strom's delay in completing its portion of the project and indemnification from IBA on Strom's claims against it. After a thorough hearing on the various claims and counterclaims, the trial court issued a 69-page order. It is from portions of that order that the parties appeal.

IBA v. MILLER-DAVIS AND STROM

IBA contends that the trial court should have dismissed all claims filed against it by Strom and Miller-Davis. IBA argues that because the claims were founded on a contract between it and Miller-Davis the claims should have been filed in the Court of Claims. We agree.

■ Any claims against a State agency founded upon a contract must be filed in the Court of Claims. The Court of Claims has exclusive jurisdiction. (*Talandis Construction Corp. v. Illinois Building Authority* (1978), 60 Ill. App. 3d 715, 717, 377 N.E.2d 237, 239.) Miller-Davis and Strom argue that, for purposes of this suit, IBA should not be considered a State agency since at the time it entered into the contract it was not a State agency.

■ Miller-Davis and Strom are correct in stating that when the contract was entered into IBA was not a State agency. However, subsequent to the signing of the contract, IBA, by legislative action, was made a State agency. (See *People ex rel. Resnik v. Curtis & Davis,*

*Architects & Planners, Inc.* (1978), 58 Ill. App. 3d 28, 373 N.E.2d 772, *aff'd* (1980), 78 Ill. 2d 381, 400 N.E.2d 918.) The issue, therefore, is whether the legislation will be applied retroactively to contracts entered into before such legislation was enacted.

In *Talandis Construction Corp. v. Illinois Building Authority* (1978), 60 Ill. App. 3d 715, 719, 377 N.E.2d 237, 241, the court considered whether the legislation would be applied retroactively. After an extensive and thorough analysis of the issue, the court determined that IBA's status as a State agency would be applied retroactively to any contracts entered into before the legislation making IBA a State agency was enacted. The court reasoned that there was nothing in the statutory scheme of the legislation that indicated an intent to withdraw circuit court jurisdiction only for determinations made since a certain date. It further reasoned that the legislation's declaration that IBA is a State agency implied that actions against IBA founded in contract had to be pursued in the Court of Claims. (60 Ill. App. 3d 715, 720, 377 N.E.2d 237.) We adopt the holding and reasoning of *Talandis* and conclude that any claims arising out of the contract between Miller-Davis and IBA must be filed in the Court of Claims.

MILLER-DAVIS V. STROM

■ Miller-Davis first contends that the trial court erred in granting prejudgment interest on the contract-retention monies withheld by it. The trial court found that Miller-Davis withheld the money without authority of law and awarded Strom $16,783.52 in prejudgment interest. Miller-Davis contends that because it withheld the retention funds in good faith, the court erred in granting Strom prejudgment interest. We agree.

The law in Illinois as to when prejudgment interest can be awarded is stated in *General Dynamics Corp. v. Zion State Bank & Trust Co.* (1981), 86 Ill. 2d 135, 140, 427 N.E.2d 131, 134, quoting *Waston Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 398, 226 N.E.2d 270, 280, as follows:

" 'Interest is not awarded on money that may be found due, if the person withholding payment has done so in good faith, because of a genuine and reasonable dispute. In other words, interest would be a proper element of recovery only if it could be said [a] relationship of debtor and creditor existed between the parties. [Citation.]

Interest can be awarded on money payable under building contracts, even when the amount payable may be uncertain until legally resolved; [citations], but it has been held error to al-

low interest on an amount due when, as here, that amount depends largely upon the construction placed on the terms of a contract, and upon questions of fact about which there is room for a difference of opinion. [Citation.]' "

The record shows that Miller-Davis withheld the funds because it believed Strom was responsible for delays in the project that substantially increased its cost of completing the project. Moreover, it filed a counterclaim against Strom to collect other monies it believed Strom owed it because of delays in the project, which it attributed to Strom's negligence. Conflicting provisions in the contract between Strom and Miller-Davis created doubt as to which company was responsible for the increased cost due to delays. Because of the conflicting provisions, Miller-Davis, in our opinion, withheld the funds in good faith to assure that it would be reimbursed for increased cost it alleged was due to Strom's negligence. Thus, we hold that the trial court erred in awarding prejudgment interest on the retention monies withheld by Miller-Davis. See *General Dynamics Corp. v. Zion State Bank & Trust Co.* (1981), 86 Ill. 2d 135, 427 N.E.2d 131.

Miller-Davis next contends that the trial court erred in awarding Strom's claims, pursuant to a change-conditions clause in the contract, for extra costs incurred in completing its portion of the project. Miller-Davis argues that several exculpatory clauses in the contract disclaim Strom's right to rely on the results of the soil-boring logs; that, therefore, Strom had a duty to obtain and perform a soil analysis; and that by not doing so, it became responsible for its own extra costs as well as those incurred by Miller-Davis because of construction delays.

The change-conditions clause reads as follows:

"SUBSURFACE CONDITIONS FOUND DIFFERENT—ARTICLE 21

Should the contractor encounter subsurface and/or latent conditions at the site materially differing from those shown on the Drawings or indicated in the Specifications he shall immediately give notice to the Architect of such conditions before they are disturbed. The Architect will thereupon promptly investigate the conditions and, if he finds that they materially differ from those shown on the Drawings or indicated in the Specifications, he will at once make such changes in the Drawings and/or Specifications as he may find necessary, any increase or decrease of cost resulting from such changes shall be adjusted in the manner provided in the article 'Changes in Work' of the GENERAL CONDITIONS."

The trial court concluded that the exculpatory clauses in the contract, which were in conflict with the change-conditions clause, did not take precedence over the change-conditions clause. Furthermore, it concluded that neither the exculpatory clauses nor any provision of the contract imposed a duty upon Strom to perform a soil analysis of the project and that Strom was only required to rely upon the soil-boring logs furnished it by Miller-Davis.

The court, in determining that the change-conditions clause took precedence over the exculpatory clauses, relied upon the reasoning and holdings of the courts in *Fattore Co. v. Metropolitan Sewerage Com.* (7th Cir. 1971), 454 F.2d 537, and *Foster Construction C. A. & Williams Brothers Co. v. United States* (1970), 435 F.2d 873. The general holding of those cases is that where a construction contract contains a change-conditions clause and exculpatory language also, the change-conditions clause should take precedence over the exculpatory language.

We agree with the trial court's finding. However, we need not determine if its reasoning is proper for we conclude that the language of the contract itself indicates that in case of conflict with other parts of the contract the change-conditions clause in this case should be given preference over the exculpatory clauses cited by Miller-Davis.

■■■ In construing specific provisions of a contract, the primary objective is to give effect to the intent of the parties. (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 364, 247 N.E.2d 886, 888.) The intent must be determined from the words used. (*Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 67, 294 N.E.2d 272, 273.) It is presumed that all provisions of a written contract were inserted for a purpose, since parties do not ordinarily insert meaningless terms into their contract. *Board of Regents v. Wilson* (1975), 27 Ill. App. 3d 26, 31, 326 N.E.2d 216, 219.

A review of the contract indicates that the parties inserted a precedence provision that reads as follows:

> "The order of precedence of the Contract Documents in the event of conflict shall be in the same order as listed in the Article entitled 'Contract Documents' of the SUPPLEMENTAL GENERAL CONDITIONS."

Our review indicates that the order of precedence of the contract provisions is as follows: (1) advertising for bids; (2) information for bidders; (3) proposal; (4) contract forms; (5) performance and payment bond; (6) general conditions and supplemental general conditions; (7) specifications (including contractors construction manual); (8) drawings; and (9) addendum.

Precedent provisions are often inserted in construction contracts that include hundreds of documents, as does the contract in this case. (See *Roosevelt University v. Mayfair Construction Co.* (1975), 28 Ill. App. 3d 1045, 331 N.E.2d 835; *In re Arbitration Between Scherrer Construction Co. v. Burlington Memorial Hospital* (1974), 64 Wis. 2d 720, 221 N.W.2d 855.) In both cases the courts determined which provision prevailed among conflicting provisions. In determining which provision prevailed, the courts in both cases relied upon the precedence provisions in the contracts to resolve the issue.

■ Similarly, we conclude that the party's intent is appropriately determined by giving effect to the precedence provision inserted in the contract. Thus, pursuant to the precedence provision, the change-conditions clause listed in the general-conditions section of the contract takes precedence over the exculpatory provision listed in the specifications section of the contract. Therefore, the trial court did not err in finding that Strom, pursuant to the change-conditions clause, could be compensated for extra costs incurred because of soil conditions not indicated by the soil-boring logs, which were furnished by Miller-Davis.

■ We next address Miller-Davis' counterclaims against Strom. In a counterclaim, setoff or recoupment action to recover damages for breach of contract, as here, the burden of proof is on the party claiming such damages to prove that such damages were caused by default of the party to be charged, separate from any damages that may have resulted from any act of claimant. The burden must be sustained by a preponderance of the evidence. *Edward Edinger Co. v. Willis* (1931), 260 Ill. App. 106, 125.

■ Miller-Davis first argues that it should be compensated for the delay attributed to Strom's alleged breach of its contractual obligations. It contends that the contract required Strom to examine the construction site and to conduct soil tests; that because of its failure to do so, it did not discover peat and poor soil conditions, which precipitated long delays in the project, thereby increasing Miller-Davis' cost to complete the project.

The trial court made numerous findings as to Miller-Davis' counterclaims. It determined that Strom fulfilled its contractual obligations by undertaking a thorough and careful examination of the documents supplied by Miller-Davis, which documents themselves (especially the soil-boring logs) contained no reference to peat or unsuitable soil on the site; that Strom did not have a contractual obligation to perform a separate soil analysis; that all the delays were attributed to the faulty soil-boring logs furnished to Strom by

Miller-Davis.

There is a strong presumption in favor of the findings of the trial court which has heard the testimony of witnesses, observed their demeanor, considered the documentary evidence and the pleadings, and has heard the oral arguments of counsel. (*Lawter International, Inc. v. Carroll* (1983), 116 Ill. App. 3d 717, 733, 451 N.E.2d 1338, 1349.) The findings of the trial court will be affirmed unless they are clearly and manifestly against the weight of the evidence. (*Lundy v. Boyle Industries, Inc.* (1977), 46 Ill. App. 3d 809, 812, 361 N.E.2d 321, 323.) Our review of the contract and the record indicates that the trial court's findings are not clearly and manifestly against the weight of the evidence.

■ Miller-Davis lastly argues that it should be compensated for damages because of Strom's failure to backfill in accordance with the contract requirements. It contends that as a result of Strom's alleged failure to fulfill its backfill contractual obligation, settlement occurred during the construction of the building and that as a result of the settlement, it was required to expend an additional $240,500 to correct the settlement problems. After hearing extensive testimony on this issue, the trial court found that insufficient evidence had been presented for it to conclude that Strom was responsible for the settlement problems. Our review of the record indicates that the trial court findings are not clearly and manifestly against the weight of the evidence.

For the foregoing reasons, the decision of the trial court as to IBA is reversed and remanded with directions that all claims in the circuit court against IBA be dismissed and the parties be given sufficient time in which to file their claims in the Court of Claims. As to Miller-Davis, that part of the trial court's order granting Strom prejudgment interest is reversed; the remaining parts are affirmed.

Affirmed in part and reversed in part and remanded with directions.

LINN, P.J., and McMORROW, J., concur.